FILED

2011 Sep-27  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

WILLIE LOUIS MACK,          )
                                  )
         Plaintiff,        )
                                  )
v.                               )  Case No. 1:09-cv-02469-WMA-JEO
                                  )
WARDEN D.B. DREW, et al.,   )
                                  )
         Defendants.    )

## <u>MEMORANDUM OPINION</u>

The plaintiff, Willie Louis Mack, hereinafter referred to as "the plaintiff," has filed a *pro se* complaint pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration in the Federal Correctional Institution in Talladega, Alabama.  The plaintiff names as defendants Warden D.B. Drew, Disciplinary Hearing Officer Harriet Mitchell, Unit Manager Rosalie Haas, Case Manager Sandra Abner, and Counselor John Bruce.[1]  The plaintiff seeks monetary and injunctive relief.  In

---

[1]   The defendants conclude in their Supplemental Special Report that because the proper respondent in a habeas case is the warden of the facility where the prisoner is being confined, current FCI Talladega warden, John Ratham, should be substituted for D.B. Drew pursuant to FED. R. CIV. P. 25(d).  However, the plaintiff <u>has not</u> filed a habeas petition. The plaintiff has filed a civil rights complaint pursuant to *Bivens* in which he alleges that Warden Drew failed to properly supervise his subordinates.  Therefore, Drew remains a defendant in this action and is

accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary review and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

On October 4, 2010, the court entered an Order for Special Report, directing that a copy of the complaint in this action be forwarded to the defendants and requesting that they file a Special Report addressing the factual allegations of the plaintiff's complaint.  (Doc. 25.)  The defendants were advised that the Special Report should be accompanied by sworn statements and, if appropriate, would be considered as a motion for summary judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. 25.)  By the same order, the plaintiff was advised that after he received a copy of the Special Report submitted by the defendants, he should file counter-affidavits if he wished to rebut the matters presented by the defendants in their Special Report.  *Id*.

On December 3, 2010, the defendants filed a "Partial Response to Order for Special Report."  (Doc. 35.)  On December 16, 2010, the court entered an Order to Supplement the Special Report.  (Doc. 37.)  On January 18, 2011, the defendants filed a Supplemental Special Report. (Doc. 41.) The defendants' Supplemental Special

---

substituted by Warden Ratham only to the extent the plaintiff seeks to bring claims against Drew in his official capacity. FED. R. CIV. P. 25(d).

Report was accompanied by affidavits and institutional records. (Doc. 41.) The plaintiff was notified that the defendants' Supplemental Special Report would be construed as a motion for summary judgment and he would have twenty (20) days to respond by filing affidavits and other material if he chose. (Doc. 48.) The plaintiff was also advised of the consequences of any default or failure to comply with FED. R. CIV. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). The plaintiff filed a response on February 11, 2011. (Doc. 46.)

## I.   SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to

show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prime facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## II.   SUMMARY JUDGMENT FACTS

Applying the foregoing summary judgment standard, the following facts appear to be undisputed or, if disputed, taken in a light most favorable to the plaintiff.

On March 19, 2005, Senior Officer Specialist Ronny Adamson took a urine

sample from the plaintiff because the plaintiff's name was on the random drug test list. (Doc. 41, Ex. 1, Adamson Aff. at 1.)  The plaintiff signed a Chain of Custody for Drug Analysis form certifying that the specimen was his and that it was provided to the collector.  (Doc. 41, Ex. 1, Adamson Aff. at 1 & Ex. 3.)  The plaintiff further certified the specimen was sealed in his presence and that the information on the label was correct.  *Id*.

On March 24, 2005, a toxicology laboratory confirmed that the plaintiff's urine specimen tested positive for Cannabinoids - THC Metabolite.  (Doc. 41, Ex. 5.)  On the same day, Dr. Guzman, Clinical Director, issued a memorandum which verified that the plaintiff was not given any medication which would present a positive test result for Cannabinoids - THC Metabolite.  (Doc. 41, Ex. 6.)

Based on the test results, the plaintiff received an Incident Report for "Use of Any Narcotics Not Prescribed for the Individual by Medical Staff," Code 112.  (Doc. 41, Ex. 7.)  The Incident Report was delivered to the plaintiff on March 24, 2005, at 2:00 p.m. *Id*.

On March 25, 2005, the plaintiff submitted an Inmate Request to Staff, addressed to Unit Manager Rosalie Haas and Warden Drew in which he requested documents and witnesses in preparation for his disciplinary hearing. (Compl., Ex. A.) Specifically, the plaintiff requested: (1) a copy of the laboratory report and chain of

custody regarding his urine sample; (2) a second urine test at his expense; and (3) a statement from the laboratory explaining the margin of error regarding Talladega inmates' urine tests. *Id*. The plaintiff further stated, "Correctional Officer (First Name Unknown) Anderson (sic), the officer that took my urine sample . . . can testify to the fact that he failed to seal the sample in my presence." *Id*.

On March 29, 2005, a hearing was held before the Unit Discipline Committee ("UDC"). (Doc. 41, Ex. 2, Mitchell Aff. at 2.) Rosalie Haas served as the UDC Chairperson. (Doc. 41, Ex. 4, Haas Aff. at 2.) Sandra Abner was employed as a Case Manager and served as a member of the UDC. *Id*. Prior to the hearing, the plaintiff asked Haas and Abner about his March 29, 2005 request for evidence and witnesses. (Compl. at 6.) Haas informed the plaintiff that her office had received the plaintiff's request but that inmates are prohibited from possessing the documents that he requested and that inmates are also not permitted to call staff as witnesses. *Id*. Haas further informed the plaintiff that an inmate's request for a retest is automatically denied. *Id*. Haas advised the plaintiff that he could only call inmate witnesses. *Id*. at 6-7. The plaintiff stated that no inmate could testify to the disputed matters. *Id*. at 7. The plaintiff contends, "It was under these particular circumstances that the hearing notice reflected that I requested no witnesses or other evidence for the disciplinary hearing." *Id*. The plaintiff claims that Abner and Haas intentionally

provided him with false information concerning a retest and his ability to obtain certain documents and witnesses which violated his right to due process.

During the UDC hearing, the plaintiff was allowed to review the chain of command custody form and the laboratory test results.  (Doc. 41, Ex. 4, Haas Aff. at 2.)  However, copies were not provided to him.  *Id*.  Witnesses are not usually called during the UDC process if the matter has to be referred to the Disciplinary Hearing Officer ("DHO").  (Doc. 41, Ex. 4, Haas Aff. at 2.)  Due to the serious nature of the drug charge against the plaintiff, the charge could not be resolved at the UDC level, and had to be referred to the DHO.  *Id.*

On the same day, the plaintiff received a "Notice of Discipline Hearing Before the DHO."  (Doc. 41, Ex. 10.)  The plaintiff signed the notice indicating that he wished to have a staff representative and declining to call witnesses. *Id*. The plaintiff further acknowledged that he had been advised of his rights at the disciplinary hearing and the duties of his staff representative, John Bruce.  (Doc. 41, Exs. 11 & 12.)

Prior to the disciplinary hearing on April 6, 2005, the plaintiff notified Staff Representative John Bruce and Discipline Hearing Officer Harriet Mitchell of his March 25, 2005, request for documents and witnesses and Haas and Abner's responses.  (Compl. at 7.)  Mitchell confirmed that the plaintiff's request for a second

urine test is automatically denied and that he could not call staff as witnesses or have the requested documents in his possession. *Id*. at 8. He claims Mitchell intentionally deprived him of his procedural due process rights as a result. *Id*. at 8. The plaintiff further claims that Bruce also deprived him of due process by failing to adequately represent him during the disciplinary hearing. *Id*.

During the hearing, Mitchell read the plaintiff's rights to him again and he acknowledged that he understood them. (Doc. 41, Ex. 2, Mitchell Aff. at 3.) Mitchell also went over the "Notice of Discipline Hearing Before the DHO" form with the plaintiff and he acknowledged that he did not request witnesses. (Doc. 41, Ex. 2, Mitchell Aff. at 3 & Ex. 13 at 1.) Mitchell then read the description of the incident provided in the incident report. (Doc. 41, Ex. 2, Mitchell Aff. at 3.)

Bruce stated during the hearing that he was surprised that the plaintiff tested positive for marijuana because he had never been in trouble before. (Doc. 41, Ex. 13 at 1.) Bruce further stated that the plaintiff worked as an orderly and was one of the best workers. *Id*. During the hearing, the plaintiff admitted to smoking Kool cigarettes and Black & Mild cigars but when asked whether he knew the cigars were laced with marijuana, the plaintiff said he did not. *Id*.

Mitchell found the following:

> [Y]ou committed the prohibited act of Code 112, Use of

Narcotics.  The finding is based on the written statement of E. Banker, Correctional Officer, that on March 24, 2005, at approximately 12:10 p.m., written confirmation was received from National Toxicology Laboratories indicating sample #B01325343, tested positive for use of Cannabinoids - THC Metabolite.

The DHO relied upon as evidence the memorandum . . . [that] you were not prescribed any medication which would cause a positive test result for Cannabinoids - THC Metabolite.

The DHO also relied upon as evidence, the Chain of Custody for Drug Analysis form.  According to the form you provided a urine sample (Specimen number B01325343) on March 19, 2005, at 9:20 a.m.  According to the Chain of Custody form, Mr. Adamson collected the specimen, and you signed the form indicating specimen number B01325343, belonged to you.

Furthermore, the DHO relied upon as evidence the Laboratory Report stating specimen B01325343, which was collected on March 19, 2005, tested positive for Cannabinoids - THC Metabolite.

You denied the charge and stated that you did not smoke marijuana.  You said you smoked Kool cigarettes and that you would sometime smoke Black and Mild cigars.  You said it would be stupid of you to smoke marijuana and you were trying to go home.  When asked if you knew that Black and Mild cigars are often laced with marijuana, you said you did not.  You said you smoked a Black and Mild one night and had to provide a urine specimen the next day.

Based on the greater weight of the evidence, which is the written statement of the reporting officer, and the supporting documentation, the DHO finds you committed

the prohibited act of Code 112, Use of Any Narcotics not Prescribed by Medical Staff.  The finding is based on some facts which is (sic) the written statement of the reporting officer which states you tested positive for Cannabinoids - THC Metabolite.    Additionally,   the   supporting documentation corroborates the written statement of Mr. Banker.  You denied the charge and stated you did not smoke   any   marijuana.    You   did,   however,   admit   to smoking a Black and Mild cigar.

The DHO considered your statement, but found the statement of the reporting officer, coupled with the supporting   documentation,   to   be   more   credible. Specifically, Mr. Banker states you tested positive for the use of Cannabinoids – THC Metabolite.  Furthermore, the Toxicology Laboratory test results for urine specimen #B01325343, documents that this specimen (B01325343) tested positive for Cannabinoids - THC Metabolite.  Also, the   Chain   of   Custody   form   verifies   that   specimen B01325343 was provided by you on March 19, 2005, at 9:20 a.m.  Additionally, the memorandum provided by the medical department states you had not been administered any medication that would cause a positive test result for Cannabinoids - THC Metabolite.   You said you did not smoke any marijuana, but admitted to smoking a Black and Mild cigar.  Black and Mild cigars are known to be laced with   marijuana,   when   a   person   is   trying   to   conceal   the presence of marijuana.  Furthermore, Mr. Banker has no reason to lie about the incident.

The DHO believes the written report, and the evidence presented at the hearing, provides some evidence to indicate you committed the prohibited act.

(Doc. 41, Ex. 13 at 3.)

Based on Mitchell's finding of guilt, the plaintiff was sanctioned to 60 days of

disciplinary segregation, 40 days loss of good conduct time, 365 days loss of visiting

privileges, 365 days loss of commissary privileges, 365 days loss of telephone

privileges, and 365 days visiting restriction.  *Id*. at 4.  Mitchell offered the following

reasons for imposing such sanctions:

> Use of drugs or illegal substances not only threatens the
> health, safety and welfare of staff, but inmates as well.
> Inmates under the influence of illegal substances have been
> known to become violent; thereby, causing harm to
> themselves as well as others.  Use of drugs or illegal
> substances is a serious offense that could lead to disruption
> in a correctional setting.  The sanction of 60 days
> disciplinary segregation is imposed to punish you for your
> actions.  The sanction of disallowance of 40 days good
> conduct time is imposed as an immediate sanction to show
> you that this type of offense is of a serious nature and
> merits serious sanctions.  The sanctions of loss of visiting
> privileges for 365 days, loss of commissary privileges for
> 365 days, loss of telephone privileges for 365 days, and
> visiting restriction for 365 days, are imposed to impress
> upon you the fact that you are expected to adhere to all the
> rules and regulations of the institution.  The sanction
> imposed involving the loss of visiting privileges was taken
> to enforce the standard of inmates being held responsible
> for their actions.  It is believed, and past evidence has
> supported, that drugs as well as drug paraphernalia are
> introduced into the inmate population through the inmate
> visiting room.  The DHO also believes that the loss of this
> privilege will have a more significant impact upon your
> future behavior.  In addition to the loss of visiting
> privileges, you received a sanction of visiting restriction,
> which is to run consecutive to the loss of visiting
> privileges.  During this time frame, you will only be
> allowed to receive visits from your immediate family

members.

*Id*.

The plaintiff filed his first appeal on June 13, 2005.  (Doc. 41, Ex. 17 at 38-39.)

On June 24, 2005, the Regional Director of Regional Administrative Remedy Appeals

responded to the plaintiff that he found the DHO substantially complied with Bureau

regulations, based the decision on the greater weight of the evidence, and imposed

appropriate sanctions.  *Id*. at 42.  Specifically, the Director found that:

> Review of the incident reveals that on March 19, 2005, you
> provided a urine sample to staff in accordance with urine
> surveillance procedures.  You signed the Chain of Custody
> for Drug Analysis form, certifying that you did provide the
> urine sample, that the specimen was sealed in your
> presence, and the information on the form and label were
> correct.  On March 24, 2005, written confirmation was
> received from Toxicology Laboratory that your urine
> specimen tested positive for Cannabinoids THC
> Metabolite.  A review of your medical file revealed you
> had not been prescribed any medication which would result
> in a positive test.   There is no merit found in your
> allegation that staff did not follow the collection
> procedures . . . . Second, you complain you requested a
> retest and staff failed to comply with your request.
> Program Statement 6060.08, Urine Surveillance and
> Narcotic Identification, Page 7, states "Retesting at the
> inmate's request is not permitted." You have presented no
> information to dispute the testing method.  Third, you
> contend the DHO failed to provide you with documents
> you requested.  Review of the discipline packet revealed
> you did not request any documents prior to or during the
> DHO proceedings. However, the documents you reference

were shared with you at your DHO hearing.  If you would like a copy of these documents, you should request them through your unit team.  Finally, you complain you were denied the right to witnesses.  You waived your right to witnesses and this is evidenced by your signature on the Notice of Discipline Hearing Before the DHO form.  We find the DHO outlined in detail the evidence she utilized to find you committed the prohibited act and the reasons she did not believe your defense.  We concur with the DHO's interpretation of the incident.

(Doc. 41, Ex. 17 at 42.)

The plaintiff then filed an appeal with the Central Office for Administrative Remedy ("national appeal") on July 17, 2005, in which he argued that:

There is no evidence whatsoever that the officer who collected Mack's urine sample actually sealed the container (which allegedly contained Mack's urine) in Mack's presence, or that proper procedures were otherwise followed.  See Part B-Response.  Secondly, the Regional Office completely ignores the fact that Mack is not responsible for properly documenting his timely requests for documentary and other forms of evidence, which he made known to prison officials in his attempts to prepare a reasonable defense, but documentation of his requests was the sole responsible (sic) of those prison officials which were adequately named in Mack's initial appeal. These named officials, however, were not contacted by the Regional Office. Id. Third, there is absolutely no evidence that the documents as referenced by Mack in his appeal were ever shared with Mack in advance of (at least 24-hours before) the challenged DHO Hearings, as improperly asserted by the Regional Office.  Id.

(Doc. 41, Ex. 17 at 44.)   Based on the foregoing, the plaintiff alleged that the

disciplinary proceedings were conducted in violation of due process as set forth in *Wolff v. McDonnel*, 418 U.S. 539 (1974). *Id.*

About July or August of 2005, the plaintiff submitted a "BP-8 ½" inmate complaint to Bruce in which he complained of the defendants' intentional deprivation of his right to due process by ignoring his March 25, 2005 inmate request for a second urine test, documents, and witnesses. (Compl. at 2.)  Bruce refused to process the plaintiff's inmate complaint and informed him that the plaintiff's unit team and the DHO "would make the necessary corrections and inform the BOP's Regional Office of the fact that [he] had indeed made a request for witnesses and other forms of evidence for the DHO hearing, but was unable to obtain the same due to . . . being an inmate." (Compl. at 4.)  The plaintiff alleges Bruce then placed his  request form in the shredder.  *Id.*  The plaintiff was provided a BP-9 form which he completed.  *Id.* He did not receive a response to the complaint and did not pursue the matter with the Regional Office, "because prison staff had clearly frustrated [his] efforts at obtaining administrative relief from the arbitrary and capricious actions of [his] unit team, including . . . Counselor Bruce and DHO."  *Id.*

On September 20, 2005, the National Inmate Appeals Administrator found that the disciplinary proceedings were in substantial compliance with Program Statement 5270.07, Inmate Discipline and Special Housing Units and that the DHO's

determination was reasonable.    (Doc. 41, Ex. 17 at 47.)    Specifically, the

Administrator found that:

> Records indicate that on March 19, 2005, you provided a urine sample to staff and signed the Chain of Custody for Drug Analysis form, certifying the specimen was yours, that you provided it to the collector, the specimen was sealed in your presence, and the information on the form and label was correct.
>
> You claim your due process rights were violated because supporting documentation and evidence were not shared with you at least 24 hours before the DHO hearing . . . . If staff provide an inmate with all of [the *Wolff* requirements], an inmate's due process rights are considered met.  Being provided supporting documentation and all evidence prior to the disciplinary hearing is not a due process right. Furthermore, the record reflects you did not raise any complaints of procedural errors during the DHO hearing. Upon review of the disciplinary record, we find you were afforded your due process rights, the required disciplinary procedures were substantially followed, the greater weight of the evidence supports the DHO's decision, and appropriate sanctions were imposed.

(Doc. 41, Ex. 17 at 47.)

### III.   DISCUSSION

### A.   Background Concerning Timeliness of Plaintiff's Complaint.

The plaintiff alleges in his complaint that the defendants committed certain

constitutional violations during his disciplinary hearings in 2005.  (Compl.)  The

complaint was not filed until December 9, 2009. *Id*.  The United States Supreme Court has held that the proper statute of limitations for a § 1983 action is the forum state's general or residual statute of limitations for personal injury.[2]  *See Owens v. Okure*, 488 U.S. 235, 236, 249-50 (1989).  The residual statute of limitations for personal injury in Alabama is two (2) years.  Ala. Code § 6-2-38(1)(1975).[3]

The plaintiff filed an affidavit attesting to the following:

> I can personally swear and affirm that I did submit my original 42 U.S.C. § 1983 Civil Action Complaint to FCI Talladega mailroom officials on June 8, 2006 for mailing to the District Court Clerk's office, with adequate U.S. Postage pre-paid and affixed there-to.  That I had actually executed my complaint on the same date.

(Doc. 20 at 2.)

The court entered an Order for Special Report, directing the defendants to respond to the allegations made in the plaintiff's complaint. (Doc. 25.) The defendants submitted a Special Report in which their sole argument was that the plaintiff's claims are barred by the applicable statute of limitations.  (Doc. 35.)

---

[2]  "The method for determining the date when a cause of action accrued for purposes of the statute of limitations in § 1983 cases is also used for *Bivens* claims, and the plaintiff's cause of action accrues when he knows or has reason to know of his injury and who has inflicted it."  *Erick v. Border Patrol of Fla. State*, 154 Fed. App'x 193, 194 (11th Cir. 2005); *see Kelly v. Serna*, 87 F.3d 1235, 1238-39 (11th Cir. 1996).

[3]  Ala. Code § 6-2-38(1)(1975) provides: "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

The court ordered the defendants to supplement their Special Report with evidence that the plaintiff did not deliver his complaint to prison authorities for mailing on or about June 8, 2006.  (Doc. 37.)  The court advised the defendants of the following in its Order to Supplement the Special Report:

> The Eleventh Circuit has held that under the "mailbox rule," a civil rights complaint is deemed filed on the date that the prisoner delivers it to prison authorities for mailing.  *See Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993).   Therefore, if the plaintiff's complaint is deemed filed on June 8, 2006, when he alleges he signed and delivered it to prison authorities for mailing, it is timely filed.  However, "the burden is on prison authorities to prove the date a prisoner delivered his documents to be mailed."  *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001); *see also Houston v. Lack*, 487 U.S. 266, 275-76 (1988) ("[P]rison authorities . . . have well-developed procedures for recording the date and time at which they receive papers for mailing and . . . can readily dispute a prisoner's assertions that he delivered a paper on a different date . . . the prison will be the only party with access to at least some of the evidence needed to resolve such questions.").

*Id*.

The defendants filed a Supplemental Special Report in which they respond that only outgoing certified legal mail is maintained in a log book.  (Doc. 41 at 5.)  If an inmate does not send his legal mail by certified service, it is not logged.  *Id*. Rodney St. John, Supervisory Correctional Systems Specialist, states in an affidavit, "I conducted a search on two occasions for the certified special mail log for May 2006.

I was unable to locate this special mail log."[4]  (Doc. 41, Ex. 16, St. John Aff. at 2.)

The court held that since the defendants failed to adequately dispute the plaintiff's sworn affidavit that he delivered his complaint to prison authorities for mailing, properly addressed and postage prepaid, on June 8, 2006, the plaintiff's complaint was timely filed.  (Doc. 47.)  *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001); *Allen v. Culliver*, 471 F.3d 1196 (11th Cir. 2006); *Houston v. Lack*, 487 U.S. 266, 275-76 (1988).

**B.**     <u>**Sovereign Immunity**</u>**.**

The United States Supreme Court has held that federal officials may be sued in their individual capacities for violations of an individual's constitutional rights. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971).  However, a plaintiff may not bring a *Bivens* action against a federal officer acting in his official capacity.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001); *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).  Therefore, to the extent the plaintiff sues the defendants in their official capacities, his claims are due to be dismissed.  The remainder of this memorandum opinion will address the plaintiff's claims against the defendants in their individual capacities.

---

[4]  The plaintiff alleges that he mailed his complaint on June 8, 2006.  Assuming the mail logs are kept by month, it is unclear why BOP staff searched for the May 2006 log instead of the June 2006 log.

C.    **Fifth Amendment – Due Process.**[5]

    1.    Defendants Mitchell, Abner, & Haas.

The plaintiff alleges that Defendants Mitchell, Abner, and Haas violated his right to due process during his March and April 2005 disciplinary proceedings when they denied his request (1) to take a second urine test; (2) for certain documents; and (3) to call Officer Adamson as a witness.  In addition to money damages, the plaintiff expressly requests the following injunctive relief in his complaint:

> On the basis of the foregoing facts and attachments, I would request that this Court order that the Federal Bureau of Prisons (BOP) promptly reverse the decision of the DHO hearing officer, dated for April 6, 2005, that the sanctioned forty (40) days loss of good time credit be ordered restored.  That any evidence of said disciplinary report be totally removed from my inmate files, and that absolutely no consideration of the same be made when determining my proper classification and security levels.

(Compl. at 10.)  The plaintiff now claims in his response to the defendants' motion for summary judgment that he does not challenge the outcome of the disciplinary proceedings, only the procedures used during those proceedings.  (Doc. 46 at 11.)

---

    [5]    The plaintiff purports to bring his due process claims against the defendants under the Fourteenth Amendment.  "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."  *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002) (internal citations omitted).  Therefore, the Fifth Amendment, rather the Fourteenth Amendment, governs the plaintiff's *Bivens* claims because federal action is at issue. *See Rodriguez-Padron v. INS*, 13 F.3d 1455, 1458 n.7 (11th Cir. 1994).

The United States Supreme Court held in *Heck v. Humphrey*:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87 (1994).

Although the plaintiff now contends that he does not challenge the deprivation of his good time credit, the U.S. Supreme Court has applied *Heck* to prisoners' claims challenging prison disciplinary actions even when the prisoner does not expressly seek reinstatement of good time credits.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (holding that *Heck* bars a prisoner's complaint that "would, if established, imply the invalidity of the deprivation of his good-time credits").  The Eleventh Circuit Court of Appeals noted in an unpublished opinion that while *Heck* does not apply to all suits challenging prison disciplinary proceedings, "if good-time credits

have been eliminated, a prisoner's § 1983 suit challenging disciplinary action may be construed as seeking a judgment at odds with his conviction or with the state's calculation of time that he must serve for the underlying sentence." *Richards v. Dickens*, 411 Fed. Appx. 276, 278 (11th Cir. Jan. 31, 2011). Therefore, unless the prisoner shows that the conviction or sentence has been previously invalidated, a § 1983 suit must be dismissed.[6] *See Edwards*, 420 U.S. at 649.

The plaintiff has not shown that the disciplinary proceedings he challenges have been invalidated in an appropriate habeas proceeding.[7] Therefore, the plaintiff's present collateral attack on the disciplinary decision is prohibited by *Heck* and *Balisok*. Based on the foregoing, the plaintiff's Fifth Amendment due process claims against Defendants Mitchell, Abner, and Haas are due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 2.   <u>Defendant Bruce</u>.

The plaintiff complains that Bruce did not assist him in obtaining the requested documents and witnesses for his disciplinary hearing. Arguably, the plaintiff's claim

---

[6]   The Eleventh Circuit has held that *Heck* applies with equal force in a *Bivens* action. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995).

[7]   On June 15, 2006, the plaintiff filed a habeas petition concerning the disciplinary action made the basis of this suit. (*Mack v. Drew*, Case No. 1:06-cv-01179-UWC-JEO.) On June 19, 2007, the plaintiff's habeas petition was dismissed with prejudice after the court determined that the plaintiff received the procedural protections provided by *Wolff*.

that Defendant Bruce failed to adequately represent him during the disciplinary hearing does not necessarily imply the invalidity of the deprivation of good time credits. However, the plaintiff has no constitutional right to assistance from a staff representative during the disciplinary process and there is no indication that the plaintiff is illiterate or that the issues were complex. *See Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). Therefore, Defendant Bruce's motion for summary judgment as to the plaintiff's due process claim is due to be granted.

### D.   First Amendment – Interference with Grievance Procedure/Access to Courts.

The plaintiff alleges that in July or August 2005, he submitted a BP-8½ grievance to Defendant Bruce concerning his complaints that Defendants Mitchell, Abner, and Haas intentionally gave him misleading information that he could not take a second urine test, obtain certain documents, or call staff as witnesses during his disciplinary proceedings.[8] He further complained that Bruce failed to adequately represent him. The plaintiff contends that Bruce informed him that staff would note his requests in the disciplinary documents and proceeded to shred the plaintiff's grievance. The plaintiff acknowledges that he then requested a BP-9 grievance, presumably from Bruce, which he completed and submitted. The plaintiff states that

---

[8]   Other than his own conclusory allegations, the plaintiff has not provided any evidence that he was, in fact, rightfully entitled to these things.

he did not receive a response to the BP-9 grievance and did not take additional steps in the administrative process because prison staff "had clearly frustrated [his] efforts . . . ." (Compl. at 4.)  The plaintiff claims that Bruce violated his First Amendment rights.

The plaintiff does not allege facts that would indicate Defendant Bruce shredded his grievance in retaliation for the plaintiff's complaints against Bruce and other staff.  Therefore, the court can only surmise that the plaintiff alleges Defendant Bruce interfered with his First Amendment right to file an administrative grievance and to ultimately access the courts.  "'[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.'" *Lewis v. Casey*, 518 U.S. 343, 406 (1996) (internal citation omitted).

The United States Supreme Court has held that the Due Process Clause assures inmates a right of meaningful access to the courts.  *See Bounds v. Smith*, 430 U.S. 817 (1977).  It is now clear, however, that in order to prevail on a claim that his right of access to the courts has been violated, an inmate must establish prejudice, *i.e.*, that "his efforts to pursue a legal claim" were "hindered."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  As the Eleventh Circuit has explained:

> With respect to access-to-court claims, *Lewis* clarifies that a plaintiff first must show actual injury before seeking relief under *Bounds*.  *See Bass v. Singletary*, 143 F.3d

> 1442, 1444 (11th Cir.1998).   This essential standing
> requirement means that prison officials' actions that
> allegedly violate an inmate's right of access to the courts
> must have impeded the inmate's pursuit of a nonfrivolous,
> post-conviction claim or civil rights action.  *See id.* at
> 1445.  To prevail, a plaintiff must provide evidence of such
> deterrence, such as a denial or dismissal of a direct appeal,
> habeas petition, or civil rights case that results from actions
> of prison officials.  *See id.* at 1446.

*Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998).

The plaintiff fails to allege that Bruce's conduct prejudiced him in the pursuit of his legal matters.  He acknowledges that after Bruce shredded the BP-8½ form, he was provided  a  BP-9 form which he completed and submitted.  The plaintiff claims he did not receive a response and concedes he did not contact the Regional Office concerning his complaint.  The plaintiff was obviously able to pursue his grievance but elected to discontinue the administrative process.  There is no basis to impute the plaintiff's personal decision to forgo his remedies to Defendant Bruce. The defendants' motion for summary judgment as to the plaintiff's First Amendment claim against Bruce is due to be granted.

### E. **Warden D.B. Drew**.

The plaintiff alleges he directed several complaints to Warden Drew's office concerning the defendants' violations of his due process rights but Drew failed to take any action. While "the doctrine of *respondeat superior* does not apply to § 1983

cases, a § 1983 plaintiff may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct, or control the actions of a subordinate who causes the injury." *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

Because the plaintiff's claims against Defendants Mitchell, Abner, Haas, and Bruce are due to be dismissed, the plaintiff's supervisory liability claims against Defendant Drew necessarily fail. Even if the plaintiff had shown that the defendants violated his constitutional rights, he has described only this single incident to support

his assertion that Drew failed to properly supervise his subordinates.  The plaintiff has not alleged any other incident prior to his 2005 disciplinary proceedings that should have put Drew on notice that his subordinates were violating inmates' constitutional rights.  Neither has the plaintiff alleged that Drew maintained a custom or policy that resulted in deliberate indifference to his constitutional rights or that Drew directed his subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.  Accordingly, the defendants' motion for summary judgment regarding the plaintiff's supervisory liability claims against Defendant Drew is due to be dismissed.

### F.   Plaintiff's Untimely Claims.

The plaintiff attempts to bring new claims against the defendants in his response to the defendants' motion for summary judgment.  Specifically, the plaintiff asserts First Amendment claims against Defendants Mitchell, Abner, Haas, and Drew and equal protection and conspiracy claims against all of the defendants.  (Doc. 46.) The plaintiff has not expressly moved to amend his complaint to allege these additional claims against the defendants and the plaintiff will not be permitted at this late date to do so.  Even if the court did consider the plaintiff's new claims, the same would be subject to dismissal pursuant to 28 U.S.C. § 1915A(b)(1) for failing to state a claim upon which relief may be granted.

First, the plaintiff has not alleged any facts to support that Defendants Mitchell, Abner, Haas, and Drew interfered with his ability to file grievances in violation of the First Amendment. Indeed, the plaintiff filed a grievance concerning the disciplinary proceedings made the basis of this suit and exhausted the administrative process. Moreover, given the fact that the plaintiff filed the instant judicial action, there is no indication that Mitchell, Abner, Haas, or Drew interfered with his right to petition the government for redress.

To allege a cognizable claim under the Equal Protection Clause, a plaintiff must allege that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on some constitutionally protected interest such as race, religion, or national origin. *See Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). Moreover, to establish an equal protection violation, a plaintiff must establish the existence of intentional or purposeful discrimination. *See Whitus v. Georgia*, 385 U.S. 545, 550 (1967). The plaintiff does not allege that he is similarly situated with any other person who was treated differently or that the disparity was based on some constitutionally impermissible basis.

Lastly, the plaintiff's general assertion that the defendants conspired to violate his constitutional rights is insufficient to state a claim. "It is not enough to simply

aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).  Accordingly, "[a] complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Id*. at 557.   The "naked assertion" of conspiracy, without "supporting operative facts," is not sufficient to state a claim under § 1983.  *See Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  Here, the plaintiff has failed to plead any supporting operative facts in connection with his claims that the defendants conspired to violate his constitutional rights.

## IV.  CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the court finds:

1.     The plaintiff's claims against the defendants in their official capacities are due to be **DISMISSED WITH PREJUDICE**;

2.     The plaintiff's Fifth Amendment due process claims against Defendants Mitchell, Abner, and Haas are due to be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

3.     The defendants' motion for summary judgment as to the plaintiff's Fifth Amendment due process claim and First Amendment claim against Defendant Bruce is due to be **GRANTED** and the claims are due to be **DISMISSED WITH PREJUDICE**;

4.     The defendants' motion for summary judgment as to the plaintiff's supervisory liability claims against Defendant Drew is due to be **GRANTED** and the claims are due to be **DISMISSED WITH PREJUDICE** as to him; and,

5.     The defendants' motion for summary judgment as to the plaintiff's belated First Amendment, Equal Protection and conspiracy claims is due to be **GRANTED** and the claims are due to be **DISMISSED WITH PREJUDICE** as to Defendants Mitchell, Abner, Haas, and Drew.

The Clerk is **DIRECTED** to serve a copy of this Memorandum Opinion upon the plaintiff and upon counsel for the defendants.

**DONE** this 27th day of September, 2011.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE